IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 94-60626
Summary Calendar
_____

SARAH ANN LOWRY, ET VIR KENNETH O. LOWRY,

                                    Plaintiff-Appellee,

and

KENNETH O. LOWRY,

                                    Plaintiff,

versus

OVERSEAS BULK TANK CORPORATION
AND MARITIME OVERSEAS CORPORATION,

                                    Defendants,

and

OVERSEAS BULK TANK CORPORATION,

                                    Defendant-Appellant.

_____

Appeals from the United States District Court
for the Southern District of Texas
(93-CV-336)
_____
(July 21, 1995)

Before JOHNSON, BARKSDALE, and PARKER, Circuit Judges.[*]

JOHNSON, Circuit Judge:

Ship agent claiming she was injured when boarding a vessel

brought suit against the owner of the vessel contending that her

---

[*] Local Rule 47.5 provides:  "The publication of opinions
that have no precedential value and merely decide particular
cases on the basis of well-settled principles of law imposes
needless expense on the public and burdens on the legal
profession."  Pursuant to that Rule, the Court has determined
that this opinion should not be published.

injuries were caused by the failure to provide a reasonably safe means of ingress to the vessel. After a bench trial, the district court found the vessel owner fifty percent liable and the agent fifty percent liable for the injuries and awarded judgment to the agent. Vessel owner now appeals and we AFFIRM.

I.   FACTS AND PROCEDURAL HISTORY

Sarah Ann Lowry was employed by Evans RUR as a ship agent and was assigned to "enter and clear" the M/V OVERSEAS ARCTIC through customs and immigration and to make arrangements to have payroll brought aboard the vessel. Lowry arrived at the dock at about 9:00 A.M. on February 29th, 1992 and, along with two customs officers, an immigration officer and some security guards, awaited the arrival of the vessel. When the vessel arrived and was made fast to the dock, shoreside personnel placed the gangway on the ship's rail.

At this point Lowry, the customs and immigration officers, and the security guards proceeded up the gangway. Upon reaching the top of the gangway, this party discovered that the bulwark ladder, a movable device which provides steps from the gangway to the vessel's deck, had not yet been placed by the crew. The customs and immigration officials jumped from the gangway to the vessel's deck, a distance of approximately forty inches. Lowry sat down on the gangway's edge and, with the help of an immigration officer and a security guard who supported her arms, hopped down to the deck.[1]

_____

[1]   Shortly after this party boarded the vessel, the crew secured the bulwark ladder to the gangway.

Lowry completed her duties that day without reporting any injuries.

The next day, however, Lowry went to the Brazos Memorial Hospital Emergency Room to be treated for back pain. She returned two days later with similar complaints. Her treatment thereafter continued for several months and she required surgery in October of 1992.

Lowry filed a complaint in redress of her injuries seeking damages against Overseas Bulk Tank Corporation (Bulk Tank), the owner of the vessel.[2] After a trial to the bench, the district court found equal negligence between Bulk Tank, who failed to provide a safe means of ingress, and Lowry, who should have waited for the bulwark ladder to be secured. Further, the district court found that Bulk Tank's negligence caused Lowry's injuries.[3] Accordingly, the district court awarded Lowry fifty percent of her medical expenses, lost future earning capacity, past earning loss, and pain and suffering. Bulk Tank timely appealed.

II. DISCUSSION

A. Duty and Breach

In an admiralty action tried to the bench, factual findings of the district court are binding unless clearly erroneous. *Avondale Industries, Inc. v. international Marine Carriers, Inc.*, 15 F.3d

---

[2] Lowry also pursued claims against Maritime Overseas Corporation, the operator of the vessel, but those claims were dismissed with prejudice during trial and are not before us.

[3] Additionally, the district court determined that Lowry was not a maritime worker as defined by the Longshore and Harbor Workers Compensation Act, 33 U.S.C. § 901 *et seq.* and, therefore, general maritime law governs this case. The parties do not dispute this finding.

489, 492 (5th Cir. 1994). Further, questions concerning the existence of negligence and causation are treated as factual issues subject to the clearly erroneous standard. *Id.* A factual finding is not clearly erroneous if it is plausible in light of the record taken as a whole. *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74, 105 S.Ct. 1504, 1511 (1985). Questions of law are reviewed *de novo*. *Dow Chemical Company v. M/V ROBERTA TABOR*, 815 F.2d 1037, 1042 (5th Cir. 1987).

General principles of negligence guide the analysis of a maritime tort case. *Daigle v. Point Landing, Inc.*, 616 F.2d 825, 827 (5th Cir. 1980). To prove negligence under general maritime law, a plaintiff "must demonstrate that there was a duty owed by the defendant to the plaintiff, breach of that duty, injury sustained by the plaintiff and a causal connection between defendant's conduct and plaintiff's injury." *In re Cooper/T. Smith*, 929 F.2d 1073, 1077 (5th Cir.), *cert. denied*, 112 S.Ct. 190 (1991).

Under general maritime law, a defendant owes a plaintiff a duty of ordinary care, which includes a duty to warn only of harm that is reasonably foreseeable. *Casaceli v. Martech Int'l, Inc.*, 774 F.2d 1322, 1328-29 (5th Cir. 1985). The circumstances of the danger and the defendant's knowledge of the risk determine the required degree of care. *Id.* at 1329. A harm is a "foreseeable consequence of an act or omission if harm of a general sort to persons of a general class might have been anticipated by a reasonably thoughtful person, as a probable result of the act or

4

omission, considering the interplay of natural forces and likely human intervention." *Consolidated Aluminum Corp. v. C.F. Bean Corp.*, 833 F.2d 65, 68 (5th Cir. 1987), *cert. denied* 108 S.Ct. 2821 (1988).

The duty implicated in this case is a shipowner's duty to exercise reasonable care under the circumstances toward those lawfully aboard the vessel who are not crewmembers. *Kermarec v. Companie Generale Transalantique*, 358 U.S. 625, 630, 79 S.Ct. 406, 409 (1959). Included within this duty is the duty to provide a safe means of ingress to the vessel. *See Massey v. Williams-McWilliams, Inc.*, 414 F.2d 675, 679 (5th Cir. 1969) (shipowner has duty to provide safe egress for crewmembers), *cert. denied*, 90 S.Ct. 282 (1970).

The district court herein found that Bulk Tank breached this duty to provide a safe means of ingress to its vessel because the gangway without a bulwark ladder constituted a dangerous condition and Bulk Tank failed to prevent access to the vessel until the ladder was in place. The bulwark ladder was secured to the gangway within minutes after Lowry boarded, though. Thus, the district court also found that, especially in light of her physical limitations, Lowry could have easily postponed boarding the vessel despite her perceived need to board simultaneously with the customs and immigration officials. Accordingly, the district court determined that the parties were equally negligent.

We conclude that the findings as to Bulk Tank's breach of duty are plausible in light of the record as a whole. First, there was

5

testimony showing that the shore gangway is commonly placed aboard a vessel without permission or notification, that persons commonly board vessels before completion of the docking procedures, and that it is not safe for persons to board a vessel before such completion. Thus, the record shows that gangway accidents were foreseeable. Moreover, the record shows that, despite the foreseeability of this type of harm, the captain did not take steps to ensure safe ingress to the vessel such as assigning a crewmember to the gangway to prevent access before placement of the bulwark ladder. Hence, it was plausible for the district court to conclude that the resultant harm to Lowry was a foreseeable consequence of the failure to secure the bulwark ladder before allowing access to the vessel.

Moreover, we cannot agree with Bulk Tank's chief argument that, as opposed to merely being fifty percent negligent, Lowry was 100 percent negligent because, despite the obvious danger posed by the lack of the bulwark ladder, she impatiently jumped to the deck. The essence of this argument is that Bulk Tank simply could not foresee that Lowry would jump. However, as noted above, there was testimony that persons commonly board the vessel before docking procedures are completed. Moreover, everyone else in the boarding party--two customs agents, an immigration official and two security guards--jumped. While Bulk Tank claims it was unable to divine that persons boarding the vessel would, instead of waiting for the bulwark ladder to be secured, attempt to negotiate the forty inches between the gangway and the deck, we are unsurprised. We agree

with the district court that it was negligent for Lowry to do so, but we cannot agree that this was the sole cause of the accident.

Lastly, we cannot agree with Bulk Tank that the district court applied the strict liability doctrine of unseaworthiness to its analysis. Although the district court did cite several Jones Act cases to establish a shipowner's duty to provide safe ingress and egress to and from its vessel, the court's analysis focused on its determination of Bulk Tank's duty to exercise reasonable care and its breach of that duty.

Accordingly, we conclude that the district court did not clearly err in determining that Bulk Tank breached its duty to provide a safe means of ingress to its vessel.

B.   Causation and Damages

In this issue, Bulk Tank initially argues that Lowry's injuries were not caused by the incident on the vessel. Under general maritime law, a party's negligence is actionable only if it is a "legal cause" of the plaintiff's injuries. *Donaghey v. Ocean Drilling & Exploration Co.*, 974 F.2d 646, 649 (5th Cir. 1992). Legal cause is "something more than `but for' causation, and the negligence must be a `substantial factor' in the injury." *Id.* (citation and internal quotation omitted). Substantial factor means more than but for the negligence, the harm would not have resulted. *Id.* A district court's finding relating to legal cause is a fact finding reviewed only for clear error. *Avondale Industries*, 15 F.3d at 492.

This argument by Bulk Tank is basically a recitation of the

7

evidence at trial from which the district court could have determined that the incident on the vessels was not the cause of Lowry's injuries. Hence, Bulk Tank stresses that Lowry had pre-existing back problems and that the jump from the gangway to the deck was very short. Further, Bulk Tank points to conflicting medical testimony and a later injury involving a fall down some stairs. Undoubtedly, this evidence could have supported a finding by the district court that the jump from the gangway was not the legal cause of the accident.

However, there was also evidence in the record supporting the determination that the district court did make--that Bulk Tank's negligence was the legal cause of the accident. Although Lowry did have pre-existing back problems, the district court noted that she had not needed treatment for those problems for more than two years before the incident on the vessel. However, the day after the incident on the vessel, Lowry obviously began having problems with her back. Further, both Dr. Southern, the physician who performed the surgery on Lowry, and Dr. Kilian, the physician who treated Lowry immediately after the accident, attributed the injuries to the jump from the gangway. In light of this evidence, we cannot say that the district court's conclusion was implausible in light of the record as a whole. *See Anderson*, 105 S.Ct. at 1511. Thus, the district court did not clearly err in finding that Bulk Tank's negligence was the legal cause of Lowry's injuries.

Finally, Bulk tank contests the district court's calculation of damages arguing that Lowry's damages for lost wages should be

8

limited to her period of temporary disability. This is because, according to Bulk Tank, the medical evidence showed that after she reached maximum medical improvement, she could have returned to work at substantially the same wages.

Trial courts are given great latitude in determining the amount of damages to be awarded, and that determination should not be set aside unless clearly erroneous. *See Nichols v. Petroleum Helicopters, Inc.*, 17 F.3d 119, 121 (5th Cir. 1994). Reversal is not appropriate unless, after reviewing the entire record, this Court is left with the unequivocal impression that a mistake has been made. *Id.*

In this case, Drs. Kilian and Southern both treated Lowry after the surgery. Both doctors testified that Lowry would be unable to work in a job that required prolonged sitting or standing, stooping, bending, or heavy lifting. Dr. Kilian testified that Lowry suffered from constant pain that prevented her from working at the time of his testimony. Further, Viola Lopez, a vocational rehabilitation expert, testified that Lowry's previous job was not within the physical restrictions imposed by the doctors. Lopez also testified that Lowry's ability to secure employment in the future would be adversely affected by her medical condition. Considering this evidence, we cannot say that the district court's finding as to Lowry's ability to return to work is implausible in light of the record as a whole. *See Anderson*, 105 S.Ct. at 1511.

Accordingly, we find no clear error in the district court's

findings as to causation and damages.

III. CONCLUSION

For the reasons stated above, the judgment of the district court is AFFIRMED.